IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

S.C., by her mother and next friend, K.G.,

Plaintiffs, Civ. No. 6:20-cv-02277-MC

v. OPINION AND ORDER

Lincoln County School District,

Defendant.

---

MCSHANE, Judge:

After prevailing in this action seeking a "stay put" order, Plaintiff moves for $694,905.55 in attorney fees and $2,392.97 in costs. Reply 19, ECF No. 63. The Court may award reasonable attorney fees in an IDEA action "to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B)(i). Any fees awarded are based on the community rate "for the kind and quality of services furnished." 1415(i)(3)(C). In determining the reasonableness of the fees and whether plaintiff was a "prevailing party," courts look to the Supreme Court's

decision in *Hensley v. Eckerhart*. *Aguirre v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1118-19 (9th Cir. 2006). As relevant here, awards of fees under the IDEA are generally analogous to awards of fees under other Congressional fee-shifting provisions such as 42 U.S.C. § 1988 and Title VII of the Civil Rights Act of 1964. *Id.* at 1118. The main difference appears to be in determining whether to enhance or reduce the lodestar figure. Ordinarily, the court decides whether to enhance or reduce the lodestar figure by evaluating a set of factors. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008). The IDEA, however, expressly states that "no bonus or multiplier may be used in calculating the fees awarded under this subsection." § 1415(i)(3)(C).

The Ninth Circuit applies the "lodestar" method for calculating attorney fees. *Fischer v. SJB–P. D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). That calculation multiplies a reasonable hourly rate by the number of hours reasonably expended in the litigation. *Id.* (citing *Hensley*, 461 U.S. at 433. A "strong presumption" exists that the lodestar figure represents a "reasonable fee," and it should therefore only be enhanced or reduced in "rare and exceptional cases." *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565, 106 S. Ct. 3088, 92 L. Ed. 2d 439 (1986).

Defendant filed objections. Resp. ECF No. 60. Most of Defendant's objections lack merit. For instance, Defendant argues that because this Court initially denied Plaintiff's motion for a stay put order, Plaintiff was not the prevailing party in respect to any fees incurred at the district court level. Resp. 8-9. This argument ignores the fact that Plaintiff prevailed at the Ninth Circuit, ultimately obtaining a published opinion directing this Court to enter a stay put order requiring Defendant to place Plaintiff at the Latham Center. *S.C. v. Lincoln Co. Sch. Dist.*, 16 F.4th 587 (9th Cir. 2021). This placement was the main relief sought by Plaintiff. That this Court

originally got it wrong, and that Plaintiff had to turn to the Ninth Circuit for relief, does not mean Plaintiff may not recover fees for work spent at the district court level. Accepting Defendant's argument, unsupported by any relevant caselaw, would simply punish Plaintiff for temporarily (and erroneously) losing one battle despite winning the war. Obtaining placement at Latham was relief on the merits that "materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farra v. Hobby*, 506 U.S. 103, 111-12 (1992). Plaintiff is therefore the prevailing party at all stages of this litigation.

Defendant also argues the fee statements are too vague and do not allow any reviewing party to differentiate between successful and unsuccessful claims. It is true that Plaintiff did not prevail on all the claims brought below. For example, the ALJ concluded Plaintiff failed to present evidence regarding compensatory education and found against Plaintiff on the Section 504 claims. The Rehabilitation Act claims, however, are closely intertwined with the FAPE claims, with the main difference being Defendant's intent. Therefore, although the Court agrees with Defendant that the billings are too vague to differentiate between the different claims, all of Plaintiff's claims pursued below consisted of a common core of facts and related legal theories. Therefore, this Court need not differentiate between hours spent on successful versus unsuccessful claims. *Hensely*, 461 U.S. at 435.

Defendant also argues Plaintiff's requested hourly rates are unreasonable, given that they are about twice what defense counsel billed (both by the hour and total billed hours). The Court discusses the reasonableness of the hourly fee and requested hours below. But the defense attorneys here are not in the same relevant legal market as Plaintiff's attorneys. Many circuits, including the Ninth Circuit, recognize that "private attorneys often charge lower rates to the government because of counterbalancing benefits such as repeat business." *Trevino v. Gates*, 99

F.3d 911, 925 (9th Cir. 1996) (quoting *Brooks v. Georgia State Bd. of Elections*, 997 F.2d 857, 869 (11th Cir. 1993)). Here, Plaintiff's attorneys have received no compensation since August 2020. Gall Decl. ¶ 16, ECF No. 57. This is not the case with the defense attorneys. Given these differences, the hourly rate charged by defense counsel here "is simply irrelevant to the establishment of a reasonable hourly rate for a plaintiff's civil rights lawyer." *Trevino*, 99 F.3d at 925 (quoting *Brooks*, 997 F.2d at 869).

As with almost all fee petitions, the Court must determine a reasonable hourly rate and multiply that by the number of hours reasonably spent. Plaintiffs request a fee of $400 per hour for Suzanne Gall and $560 per hour for Andree Larose and Alice Nelson. Contrary to the declarations of plaintiffs' experts, the Court concludes these requested rates are not reasonable for the type of services provided in this action. Courts apply prevailing community market rates for purposes of § IDEA fee determinations. § 1415(i)(3)(C). Prevailing market rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation to a plaintiff's counsel of record. *Blum v. Stenson*, 465 U.S. 886, 897 (1984). Accordingly, this District uses the Oregon State Bar 2017 Economic Survey as the initial benchmark when reviewing fee petitions.[1]

In the Court's view, the determination of a reasonable rate along with the reasonable hours spent are two sides of the same coin. *See T.B. v. Eugene Sch. Dist.*, 2016 WL 3951385 at * 2 (D. Or. July 21, 2016) (noting Plaintiffs in IDEA case "are attempting to double dip by charging an hourly rate higher than one's experience allows, yet spending the excess hours a less-experienced attorney needs to accomplish similar tasks."). In other words, "there is a reason

[1] The economic survey is available at: http://www.osbar.org/_docs/resources/Econsurveys/17EconomicSurvey.pdf

more experienced attorneys command a higher hourly wage." *Id.* They use knowledge previously gained to perform work faster than one lacking such experience.

The first inkling that the requested fees are excessive came when reviewing the hours Plaintiff requests for "fees on fees." Plaintiff seeks $77,205.00 for work performed on the motion for fees and accompanying declarations, and the reply in response to Defendant's objections. Reply Ex. 1. While this number certainly raises an eyebrow, the fact that Plaintiff's attorneys somehow managed to bill nearly 150 hours of attorney time (at an average requested rate of over $500 per hour) on this issue is staggering. The Court, after conducting an analysis of other "fees on fees" cases within both the Ninth Circuit and the district of Oregon itself, concludes this fee petition is, for lack of a better term, quite bloated.[2]

A fee petition is a fairly standard document, and that is especially so for civil rights attorneys like the moving attorneys here. Once an attorney puts one together, there is no need to reinvent the wheel when next turning to a court for fees. There will of course be tweaks here and there and the attorney will need to secure new declarations from other attorneys in the field. But attorneys charging high requested rates cannot (1) charge those high rates while (2) spending hours that a more experienced (and better compensated) attorney would not spend. While the Court could perhaps envision a second-year law student taking 150 hours to put together a fee petition, these hours are patently unreasonable for attorneys with over 20 years of experience in a legal area that frequently deals in fee petitions. But the mere hunch that this petition is bloated is just that, a hunch. So the Court reviewed other "fees on fees" cases.

[2] This in no way implies Plaintiff's attorneys are not competent. They achieved practically the best result their client could have hoped for. That said, the requested hours and hourly rates are not reasonable for this market.

Judge Mosman recently resolved a contested "fees on fees" motion. *Wentz v. Progressive Direct Ins. Co.*, No 3:21-cv-00473-MO, 2021 WL 5798048 (D. Or. Dec. 6, 2021). Although that petition came at an earlier stage of litigation and only concerned a successful motion to compel, that attorney sought 6.9 hours for drafting the motion for fees (ECF No. 19-2, 6) and 4.3 hours drafting the reply (ECF No. 21, 7). Judge Mosman concluded those hours were reasonable. *Id.* at *3. In *A.P. v. Pasadena Unified School District*, Plaintiff moved for 626.3 hours in attorney fees after prevailing at summary judgment in an IDEA case. 2021 WL 5249658 *7 (C.D. Ca. Aug. 24, 2021). Included in that request was 26.7 hours in drafting the reply in support of the motion for fees. *Id.* Those attorneys billed a rate in the ballpark of what Plaintiffs request here. *Id.* (noting hourly rates of $375 per hour to $555 per hour). The court concluded "[i]t is simply unreasonable for counsel to have spent . . . '26.7' hours on the Reply brief alone." *Id.*

Other cases support this Court's hunch that the fee petition at issue is unreasonable. *C.J. v. Bellflower Unified School District* is another IDEA case involving a contested "fees on fees" petition. 2020 WL 4917144 (C.D. Ca. Aug. 21, 2020). The court concluded 40 hours spent on the fee briefings was reasonable. *Id.* at *3. Those attorneys specialized in special education law and were awarded $18,562.50 for their work on the fee petitions. *Id.* Similarly, *Williams S. Hart Union High School District v. Antillon* is yet another IDEA case involving "fees on fees." There, the student moved for $364,960.00 in fees after the district court granted summary judgment in the student's favor (affirming the decision of the administrative law judge below). 2021 WL 5544926 at *3 (C.D. Ca. Nov. 1, 2021). The student sought 65.6 hours for the fee motion and an additional 61.4 hours for the reply in support of the fee motion. *Id.* The court found 61.4 hours to draft the reply "excessive" and cut the request in half. *Id.* Yet another recent IDEA "fees on fees" case is *Howard G. v. Dept. of Ed.*, 2020 WL 2563275 (D. Haw. May 5, 2020). After the district

court affirmed the ALJ's decision, the student moved for $216,098.25 in attorney fees. *Id.* at *2. Plaintiffs filed a supplemental memorandum seeking an additional $4,360.00 in "fees incurred as a result of the Attorneys Fees Motion." *Id.* The court concluded that $2,261.78 for 7.2 hours of work performed on the fees motions was reasonable and recoverable. *Id.* at *18. And in *Pineros Campesinos Unidos Del Noroeste v. Pruitt*, Plaintiffs moved for nearly $250,000 in fees after prevailing at summary judgment. 2018 WL 6613830 at *2 (N.D. Ca. Oct. 16, 2018). Of that, Plaintiffs sought $2,243.41 in work performed on the fee motion. *Id.* In stark contrast to Plaintiff here, those attorneys managed to draft a fee petition and motion, accompanying declarations, and a reply in only 16.7 hours. ECF No. 53.5.

In fact, the Court found only a handful of cases approaching Plaintiff's claimed hours for "fees on fees". In *Greenpeace, Inc. v. Stewart*, 2020 WL 2465421 (9th Cir. 2020) (unreported), the Appellate Commissioner concluded 119.6 hours "claimed for preparing the fee pleadings . . . is justified in part by the 10-year history of this court and multiple pleadings in the administrative agency, the district court, and this court, and the complex factual and legal issues in these proceedings." *Id.* at *10. Ultimately, the Commissioner cut even that "justified" request by nearly 40%. *Id.* And in a "high-stakes patent litigation" involving three motions for summary judgment, a *Daubert* hearing, and a five-day jury trial, the court concluded a flat fee of $150,000 for all fee work was reasonable. *Finjan, Inc. v. Juniper Network, Inc.*, 2021 WL 3674101 at *12 (N.D. Ca. May 20, 2021). Notably, this amount "includes past and future fee-related proceedings before the Court, and the work that it did before the Special Master, which involved breaking Juniper's bills into 133 projects, submitting briefing and conducting multiple hearings. Such fees are reasonable given the amount of work involved, and Finjan does not object." *Id.* That court ultimately awarded nearly $6,000,000 in total fees. *Id.* This case was nowhere near as lengthy or

complex and the fee briefing here does not remotely approach the briefings with hearings there. Here, the briefings consisted of a standard motion with accompanying declarations and a reply. Nothing in these filings demonstrate a need for 150 hours of legal work.

Without a doubt, as evidenced by the cases above, evaluating the "reasonableness" of a fee petition is not an exact science. It is a fool's errand to even attempt to calculate the exact number of hours an attorney should have spent on either an entire case or a discrete issue. The only thing the Court is sure of is that Plaintiff's request for nearly 150 hours at over $500 per hour for the "fees on fees" briefings is patently unreasonable. But how does the Court arrive at a reasonable number of hours?

One helpful case is an employment action this Court presided over a few years ago involving extensive discovery, a motion to compel, multiple rounds of summary judgment, and a successful appeal reversing this Court's opinion granting summary judgment. *Kardell v. Lane County*, No. 6:13-cv-00736-MC (D. Or.). While that case did not involve an administrative hearing, it did include a five-day jury trial and extensive pretrial filings. It also involved a new firm taking over as Plaintiff's counsel after the Court granted Defendants' initial motions for summary judgment. After prevailing at trial six years into litigation, Plaintiff filed an extensive fee petition (and related declarations and detailed timekeeping) in support of over 2,000 hours of attorney fees. ECF Nos. 197-202. Despite those filing being more robust than those at issue here, Plaintiff sought to recover only 86.7 hours of time spent preparing the fee petitions and reply. ECF No. 222. Notably, included in those 86.7 hours was time spent responding (successfully) to Defendants' motion for judgment as a matter of law. The lead attorney who drafted the fee briefings had nearly 6 years of legal experience. ECF No. 198, ¶12. Reviewing the above case

solidifies the Court's hunch that Plaintiff's motion for "fees on fees" contains an unreasonable amount of hours, at nearly any requested rate.

As noted, determining a reasonable amount of hours spent is an inexact science. The number of hours reasonably spent, however, is merely one of the lodestar factors. *Fischer*, 214 F.3d at 119). The other factor is determining a reasonable hourly rate. *Id.* Prevailing market rates are those that the local legal market would pay for a case of this nature to a lawyer of comparable skill, experience, and reputation to a plaintiff's counsel of record. *Blum*, 465 U.S. at 897. Plaintiff submitted several declarations in support of the requested hourly rates. Unsurprisingly, the declarations each opine that the requested hourly rates are reasonable. Bonaparte Decl. ¶ 11, ECF No. 50; Legaard Decl. ¶ 22-23, ECF No. 51; Martin Decl. ¶ 40-41, ECF No. 54. Mr. Bonaparte confirms that he "reviewed hourly rates awarded in IDEA cases in the Ninth Circuit." Bonaparte Decl. ¶ 10. Mr. Bonaparte also confirms that he specifically sought out "Oregon practitioner Diane Wiscarson, who is a special education expert." Bonaparte Decl. ¶ 13. But reviewing Ms. Wiscarson's own declarations—who Plaintiff's own fee expert acknowledges "is a special education expert"—in recent fee petitions in IDEA cases, confirms that Plaintiff's requested hourly rates are unreasonable.

In the *T.B.* case noted above, Ms. Wiscarson submitted a declaration in support of that Plaintiff's motion for fees. ECF No. 50-6. That declaration, submitted in April 2016, stated that Ms. Wiscarson specialized in representing students in IDEA cases for 20 years. ECF No. 50-6 ¶ 5. Ms. Wiscarson noted she is "an active and frequent presenter in the field of special education law. My hourly rate for hearings is $250.00." ECF No. 50-6 ¶ 5. Ms. Wiscarson, like Ms. Gall, is based out of Portland, Oregon.

In December 2021, Ms. Wiscarson moved for fees in an IDEA case before Judge Simon. *Hood River Co. Sch. Dist. v. Student*, No. 3-20-cv-1690-SI, ECF No. 56. There, Ms. Wiscarson stated her hourly rate was $285 until January 2021, when it went to $325. *Id.* Judge Simon noted that in determining a reasonable hourly rate, courts "should consider the experience, skill, and reputation of the attorneys or paralegals involved." *Hood River*, 2022 WL 1153986 at *4 (D. Or. April 19, 2022 Opinion). In concluding the requested hourly rates were reasonable, Judge Simon looked to the Oregon State Bar 2017 survey. Rather than looking at the general rates for Portland attorneys in private practice, however, Judge Simon looked instead at the survey's results for attorneys practicing administrative law. *Id.* at *8 (noting $315 per hour is 75th percentile and $300 is median rate for those practicing administrative law). Judge Simon ultimately concluded that given the hourly rates for administrative law attorneys, along with Ms. Wiscarson's experience and expertise, her hourly rates of $285 per hour before January 2021 and $325 per hour after were reasonable. *Id.* The Court finds Judge Simon's analysis persuasive. Also persuasive is the fact that Plaintiff's own fee expert confirmed that in forming his opinion on the reasonableness of fees, he specifically sought out "Oregon practitioner Diane Wiscarson, who is a special education expert." Bonaparte Decl. ¶ 13.

Other information in Plaintiff's own expert declarations confirm the hourly rates sought here are unreasonable. For instance, Plaintiff submits a declaration of Dorene Philpot. ECF No. 55. Ms. Philpot is a solo practitioner who has practiced special education law since 2000. Philpot Decl. ¶ 4. Ms. Philpot has litigated "more than 100 multi-day special education due process hearings and Section 504 hearings." Philpot Decl. ¶ 5. Ms. Philpot has received national recognition for her work in the field of special education and published an educational book about litigating special education proceedings. Philpot Decl. ¶¶ 6-7. Ms. Philpot is a regular

speaker at state and national special education conferences. Philpot Decl. ¶ 8. Ms. Philpot notes she was recently awarded attorney fees in an IDEA case in the Southern District of Texas. Philpot Decl. ¶ 21 (citing *Krawietz v. Galveston*, 2019 WL 1112666 (S. D. Texas March 11, 2019) (unreported). In reviewing that case, however, despite her extensive expertise in special education law, Ms. Philpot only sought fees of $325 per hour. *Krawietz*, 2019 WL 1112666 at *2. The Court reviewed the Texas State Bar survey and the median hourly rate for Ms. Philpot's market is $297. This corresponds to the median hourly rate of $300 per hour in Ms. Gall's market.

Despite requesting an hourly rate of $75 more than Ms. Philpot and Ms. Wiscarson, Ms. Gall has nowhere near their level of expertise in the area of special education law. Those attorneys have over 20 years each of experience specifically in special education law. Ms. Gall only started practicing special education law in 2016. Gall Decl. ¶ 13, ECF No. 57. While Ms. Gall states she attends special education conferences, her declaration, extensive as it is, does not indicate that she has any relevant practical experience in special education law outside of this litigation.

Ms. Gall's relative inexperience in this area of law normally might not account for much. But Plaintiff's experts here each comment on the highly specialized nature of specialized education law and confirm that experience accounts for a great deal. Tal Goldin states:

> Special education litigation is a highly technical sub-specialty of disability law. The law itself is a complex web of federal, state, and local law, regulation, and policy. It is not enough for a special education attorney to simply know the law or have strong litigation skills. Special education attorneys must develop fluency with educational policy and interventions; K-12 pedagogical approaches; general education and adapted curricula; the multitude of disabilities and various ways they manifest in children; transition planning for post-secondary life; behavioral interventions; multi-party dispute resolution; and many other topics. Successful

> special education practitioners must engage in ongoing and extensive continuing education far beyond minimal licensing requirements.

Goldin Decl. ¶ 23; see Martin Decl. ¶ 15 ("Special education law is generally considered to be a complex specialized area of law."); see Bonaparte Decl. ¶ 25(b) ("Special education litigation is a unique area of law and requires intricate statutory knowledge. The legal principles involved in the enforcement phase regarding educational placement were relatively straightforward for practitioners of special education law, but would be challenging for attorneys not familiar with IDEA's complex and extensive procedural safeguards."); see Leggard Decl. ¶ 14 (The law is very complex as well. . . . . [D]etermining if the school district has complied with these procedural protections requires extensive knowledge of an exceedingly complex area of law.").

Given the niche expertise required to practice special education law, it is not at all clear that Ms. Gall's experience in other administrative law areas (such as worker's compensation) are transferrable. Given this, Ms. Gall's request to be compensated at the rate of an attorney with 16-20 years experience (at a private practice rate rather than at the administrative law rate), along with the rates recently sought by Ms. Philpot and Ms. Wiscarson in IDEA cases, is unreasonable. Although Ms. Gall's experience requires a lower rate, as indicated above, her relative lack of experience understandably results in more hours necessary to achieve the same result. Additionally, the Court emphasizes that Ms. Gall achieved an excellent result in this action. Despite that success, the Court felt the need to make a record backing up the conclusion that an hourly rate of $400 per hour for Ms. Gall is unreasonable.

Given all of the above, the Court concludes $250 per hour is a reasonable rate for Ms. Gall and $325 per hour is a reasonable rate for Ms. Larose (who has similar special education experience as Ms. Wiscarson). Regarding the reasonable number of hours, the Court is somewhat

influenced by the sheer overreach in the requested compensation for the "fees on fees" work. The Court wonders is similar overworking filtered into the earlier legal work. Complicating this is the fact that Ms. Nelson passed away during the litigation. And no records regarding Ms. Nelson's recording of her own time, in the event such records ever existed, are now available. Gall Decl. ¶ 2, ECF No. 49. The Court declines to award any fees for Ms. Gall's attempt at reconstructing Ms. Nelson's hours. In addition to the actual requested hours being speculative, there are concerns regarding duplicative work and whether each attempted reconstruction constituted time that would justify billing of two attorney when only one would suffice. Additionally, the Court is not dramatically reducing the time claimed by Ms. Larose, who replaced Ms. Nelson. Were the Court to award fees for Ms. Nelson's time, it would take a much harder look at Ms. Larose's claimed hours. Ms. Larose spent over 200 hours on this action (before any work on the fees). Reply Ex. A. The great majority of these hours were spent on the Ninth Circuit appeal. The Court can only conclude that many, if not most, of those hours were for getting up to speed and not on the actual appeal. After all, the appeal consisted of the same legal question that had been extensively briefed before this Court. Were this Court to award hours for Ms. Nelson's own allegedly reconstructed hours, it would have to take a much harder look at how Ms. Larose spent over 200 hours on briefings that had largely already been briefed.

Considering *Hensley's* "degree of success" standard in IDEA cases, and considering that Plaintiff obtained essentially the best result possible, the Court awards all of the hours requested by Ms. Gall and Ms. Larose spent before the fee briefings. This amount comes to:

Ms. Gall: 1,004.6 hours at $250 per hour = $251,150.00

13.2 hours travel time at $200 per hour = $2,640.00

81.3 hours paralegal time at $125 per hour = 10,522.05

Travel expenses of $2,522.05

Ms. Larose: 204.8 hours at $325 per hour = $66,560.00

The above total comes to $333,394.10.

Regarding the request for "fees on fees," the Court finds only half of those hours were reasonable. Those hours come to:

Ms. Gall: 22.8 hours at $250 per hour = $5,700.00

Ms. Larose: 52 hours at $325 per hour = $16,900.00.

Added to the $333,394.10 above, the total is $355,994.10. Plaintiff also seeks costs of $2,392.97 and Defendant does not object to the costs.

Plaintiff is awarded $355,994.10 in fees and $2,392.97 in costs.

IT IS SO ORDERED.

DATED this 18th day of May, 2022.

/s/ Michael J. McShane
Michael McShane
United States District Judge